UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

---------------------------------------x
IN RE: RITE AID CORPORATION          :  MDL-1360
SECURITIES LITIGATION                :  Master File No. 99-CV-1349 (SD)
                                     :
This Document Relates to:            :  CLASS ACTION
  ALL ACTIONS                        :
---------------------------------------x

**AFFIDAVIT OF D. LEE JANVRIN
IN SUPPORT OF MOTION FOR
<u>DISTRIBUTION CLASS SETTLEMENT FUNDS</u>**

STATE OF CALIFORNIA  )
                     ) SS
COUNTY OF MARIN      )

D. LEE JANVRIN, being first duly sworn, deposes and says:

1. I am employed with the firm of Gilardi & Co. LLC. Plaintiffs' Counsel retained Gilardi & Co. LLC to act as the Claims Administrator herein to mail copies of two Settlement Notices and Proof of Claim forms to Class Members and the Derive Action Settlement notice to Rite Aid shareholders, to cause the publication of summary notices, to process all claims submitted by Class Members in this action, and to distribute the Net Settlement Funds to Authorized Claimants. I make this affidavit in support of Plaintiffs' application for an Order (a) approving the administrative actions taken by my firm in accepting and rejecting the claims submitted by claimants herein; (b) directing payment to Gilardi & Co. LLC of its fees and expenses in connection with the services performed and to be performed in giving notices to the Class and Rite Aid shareholders, in the processing the Proofs of Claim, and the administration and distribution of the Settlement Funds; and (c) directing distribution of the Net Settlement Funds to eligible claimants whose claims have been accepted.

## PROCEDURES FOLLOWED IN ACCEPTING AND REJECTING CLAIMS

2. Under the terms of the Stipulation and Agreement of Settlement with Rite Aid Settling Defendants dated December 18, 2000 (the "Class Stipulation with Rite Aid Settling Defendants"), the Stipulation and Agreement of Settlement with KPMG LLP dated March 10, 2003 (the "KPMG Stipulation"), the Stipulation and Agreement of Settlement with Martin L. Grass dated April 7, 2003 (the "Grass Stipulation"), and the Stipulation and Agreement of Settlement with Timothy J. Noonan dated December 27, 2002 (the "Noonan Stipulation") (collectively, the "Stipulations"), Class Members were required to submit a Proof of Claim form in order to obtain their share of the Net Settlement Funds.

3. The procedure followed by my firm in processing the claims was to receive all correspondence and claims submitted in this matter from Post Office Box 8040, San Rafael, California 94912-8040. Envelopes received from the Post Office Box were opened and sorted into correspondence, such as requests for claim forms, and actual Proof of Claim forms. The correspondence received was reviewed and appropriate responses given. The claim forms were opened and all submitted documentation was stapled to the claim form, and the claim form was assigned a claim number. The information from each claim form, including the name, address, Employer I.D. or Social Security Number of the claimant, and the purchase and sales transactions listed on the claim were then entered into a computerized data base. The documentation provided in support of each claim by the claimant was reviewed to ascertain whether the claimant had in fact purchased[1] Rite Aid securities[2] on the open market during the

---

[1]  A sale or writing of a Put Option on Rite Aid common stock shall be deemed to be a purchase of Rite Aid securities for purposes of the Settlement.

[2]  "Rite Aid securities" includes common stock, Call Options on Rite Aid common stock, Put Options on Rite Aid common stock, and the following Rite Aid Notes: 5¼% Notes due 09/15/02, issued 9/10/97; 6.7% Notes due 12/15/01 issued 12/20/96; 6-7/8% Notes due 08/15/13 issued 08/23/93; 7-1/8% Notes due 01/15/07 issued 12/20/96;

2

period from May 2, 1997 through November 10, 1999, inclusive and suffered damages thereby. Claims were then reviewed to be sure they were not from any of the Defendants, members of the immediate families (parents, siblings and children) of each of the Individual Defendants, any person, firm, trust, corporation, entity in which any Defendant has a controlling interest, the officers, directors, parents, subsidiaries and affiliates of any corporate Defendant, the partners and principals of any partnership defendant, and the legal representatives, heirs, successors in interest or assigns of any such excluded party to the extent that the identities of such persons or entities are known to us through the list of defendants and through the claimant's certification on the Proof of Claim form. Claims were also reviewed against the list of persons who requested exclusion.

4.  Where a submitted claim lacked the required information or documentation to substantiate the Class Member's transactions during the Class Period, or was otherwise ineligible, a letter was sent to the claimant advising him or her of the deficiency and requesting the submission of the appropriate documentary evidence or correction of the defect. Attached hereto as Exhibit A are copies of the forms of letters used to notify claimants of the deficiency in their claim.

5.  Where a deficiency letter was sent, each claimant was notified that unless the deficiency was corrected within twenty (20) days, his or her claim would be accepted only to the extent of the documentation supplied, or that the claim would be entirely rejected if they had not supplied the required documentation or information for any transactions.

---

7-5/8% Notes due 04/15/05 issued 04/20/95; 7.7% Notes due 02/15/27 issued 12/20/96; 5.5% Notes due 12/15/00 issued 12/21/98; 6.0% Notes due 10/1/03 issued 9/22/98; 6.0% Notes due 12/15/05 issued 12/21/98; 6.125% Notes due 12/15/08 issued 12/21/98; 6.875% Notes due 12/15/28 issued 12/21/98.

6. Claimants who submitted claims which showed that they were ineligible to participate in the settlement (for example, where their claim showed that they had suffered no loss from their purchases of Rite Aid Securities during the Class Period) were sent a Rejection Letter. The Rejection Letter, samples of which are attached hereto as Exhibit B, advised the claimant of his right to request this Court's review of our administrative determination rejecting the claim. The letter stated that the claimant could request this Court's review of the rejection of their claim by submitting a statement in writing setting forth the reasons why they believe that the claim was adequately submitted. No claimants have outstanding requests for this Court's review of the rejection of their claims.

7. Claims which were properly submitted and supported with adequate documentary evidence were recognized on the basis of the following "Recognized Loss" formula as stated in the Plan of Allocation in the Notices as previously approved by the Court:

1. **Purchasers of Publicly Traded Shares of Rite Aid Common Stock ("Shares")**

   a. **Purchasers of Shares Between May 2, 1997 and March 11, 1999 ("Sub-period 1")**

   (1) For Class Members who purchased Shares during Sub-period 1 and who sold such Shares during Sub-period 1, the Recognized Loss was deemed to be zero.

   (2) For Class Members who purchased Shares during Sub-period 1 and who sold such Shares at a loss between March 12, 1999 and September 22, 1999 ("Sub-period 2"), the Recognized Loss was the difference between the purchase price and the sales price up to a maximum Recognized Loss of $13.44 per Share.

   (3) For Class Members who purchased Shares during Sub-period 1 and who sold their Shares at a loss between September 23, 1999 and October 11, 1999, inclusive ("Sub-period 3"), the Recognized Loss was the difference between the purchase price and the sales price of the Rite Aid Stock up to a maximum Recognized Loss of $16.44 per Share.

(4)     For Class Members who purchased Shares during Sub-period 1 and who sold their Shares at a loss between October 12, 1999 and November 9, 1999 ("Sub-period 4"), the Recognized Loss was the difference between the purchase price and the sales price of the Rite Aid Stock up to a maximum Recognized Loss of $18.69 per Share.

(5)     For Class Members who purchased Shares during Sub-period 1 and who sold their Shares at a loss on November 10, 1999 or who still held such Shares at the close of trading on November 10, 1999 ("Sub-period 5"), the Recognized Loss was either (a) the difference between the purchase price and the sales price of the Shares for Shares sold on November 10, 1999, or (b) the difference between the purchase price and $9.17 per Share for Shares held at the close of trading on November 10, 1999, ($9.17 being the average closing price during a 90-day period following the end of the Class Period), subject to a maximum Recognized Loss of $21.25 per Share.

b.      **Purchasers of Shares Between March 12, 1999 and September 22, 1999 ("Sub-period 2")**

(1)     For Class Members who purchased Shares during Sub-period 2 and who sold such Shares at a loss during Sub-period 2, the Recognized Loss was deemed to be forty percent (40%) of the difference between the purchase price and the sales price of the Rite Aid Stock up to a maximum Recognized Loss of $2.00 per share.

(2)     For Class Members who purchased Shares during Sub-period 2 and who sold such Shares at a loss during Sub-period 3, Recognized Loss was the difference between the purchase price and the sales price of the Shares up to a maximum Recognized Loss of $2.00 per share.

(3)     For Class Members who purchased Shares during Sub-period 2 and who sold their Shares at a loss during Sub-period 4, the Recognized Loss was the difference between the purchase price and the sales price of the Shares up to a maximum Recognized Loss of $4.25 per Share.

(4)     For Class Members who purchased Shares during Sub-period 2 and who sold their Shares at a loss on November 10, 1999 or who still held such Shares at the close of trading on November 10, 1999, Recognized Loss was either (a) the difference between the purchase price and the sales price of the Shares for Shares sold on November 10, 1999, or (b) the difference between the purchase

5

    price and $9.17 per Share for Shares held at the close of trading on November 10, 1999, subject to a maximum Recognized Loss of $6.81 per Share.

 **c.**  **Purchasers of Common Stock Between September 23, 1999 and October 11, 1999 ("Sub-period 3")**

   (1)  For Class Members who purchased Shares during Sub-period 3 and who sold such Shares at a loss during the same Sub-period 3, the Recognized Loss was deemed to be zero.

   (2)  For Class Members who purchased Shares during Sub-period 3 and who sold their Shares at a during Sub-period 4 Recognized Loss was the difference between the purchase price and the sales price of the Shares up to a maximum Recognized Loss of $2.25 per Share.

   (3)  For Class Members who purchased Shares during Sub-period 3 and who sold their Shares at a loss on November 10, 1999 or who still held such Shares at the close of trading on November 10, 1999, Recognized Loss was either (a) the difference between the purchase price and the sales price of the Shares for Shares sold on November 10, 1999, or (b) the difference between the purchase price and $9.17 per Share for Shares held at the close of trading on November 10, 1999, subject to a maximum Recognized Loss of $4.81 per Share.

 **d.**  **Purchasers of Common Stock Between October 12, 1999 and November 9, 1999 ("Sub-period 4")**

   (1)  For Class Members who purchased Shares during Sub-period 4 and who sold such Shares at a loss during the same Sub-period 4, the Recognized Loss was deemed to be zero.

   (2)  For Class Members who purchased Shares during Sub-period 4 and who sold their Shares at a loss on November 10, 1999 or who still held such Shares at the close of trading on November 10, 1999, Recognized Loss was either (a) the difference between the purchase price and the sales price of the Shares for Shares sold on November 10, 1999, or (b) the difference between the purchase price and $9.17 per Share for Shares held at the close of trading on November 10, 1999, subject to a maximum Recognized Loss of $2.56 per Share, and a minimum Recognized Loss of $0.25 per Share.

 **e.**  **Purchasers of Common Stock on November 10, 1999 ("Sub-period 5")**

6

    (1)    For Class Members who purchased Shares on November 10, 1999 and either sold these shares on November 10, 1999 or who still held such Shares at the close of trading on November 10, 1999, Recognized Loss was either (a) the difference between the purchase price and the sales price of the Shares for Shares sold on November 10, 1999, or (b) the difference between the purchase price and the closing price per Share for Shares held at the close of trading on November 10, 1999, subject to a maximum Recognized Loss of $0.25 per Share.

2. **Purchasers of Publicly Traded Rite Aid Notes ("Notes")**

    (1)    For Class Members who purchased any of the publicly traded Notes during the Class Period and who sold such Notes on or before September 22, 1999, the Recognized Loss was deemed to be zero.

    (2)    For Class Members who purchased Notes during the Class Period and who sold their Notes at a loss during the period from September 23, 1999 to November 10, 1999, Recognized Loss was the difference between the purchase price and the sales price of the Notes.

    (3)    For Class Members who purchased Notes at any point during the Class Period and who held such Notes at the close of trading on November 10, 1999, Recognized Loss was the difference between the purchase price of the Notes and the average value of the Notes during a 90-day period following November 10, 1999.

3. **Purchasers of Call Options and Sellers of Put Options**

    (1)    For any option positions open as of the close of business on March 11, 1999, Recognized Loss shall be the difference, if a loss, between the price paid and the amount received on the opening and closing of that option, but shall be limited to the difference in the premium price of the option contracts between the close of trading on March 11, 1999 and the close of trading on March 12, 1999.

    (2)    For any option positions open as of the close of business on September 22, 1999, the Recognized Loss shall be the difference, if a loss, between the price paid and the amount received on the opening and closing of the option, but limited to the difference in the premium price of the option contracts between the close of trading on September 22, 1999 and the close of trading on September 23, 1999.

    (3)    For any option positions open as of the close of business on October 11, 1999, the Recognized Loss shall be the difference, if a

7

            loss, between the price paid and the amount received on the opening and closing of the option, but limited to the difference in the premium price of the option contracts between the close of trading on October 11, 1999 and the close of trading on October 12, 1999.

    (4)    For any option positions open as of the close of business on November 9, 1999, the Recognized Loss shall be the difference, if a loss, between the price paid and the amount received on the opening and closing of the option, but limited to the difference in the premium price of the option contracts between the close of trading on November 9, 1999 and the close of trading on November 10, 1999.

    (5)    For any option positions open as of the close of business on more than one of the following days: (i) March 11, 1999, (ii) September 22, 1999, (iii) October 11, 1999 or (iv) November 9, 1999, the Recognized Loss shall be the sum of the appropriate Recognized Loss calculations set out in paragraphs (1) through (4) above.

    (6)    All other option transactions not included in subparagraphs (1) through (5) above shall have no Recognized Loss.

    8.    As stated in the Notices and as previously approved by the Court, in connection with the determination of Recognized Losses the following rules were applied: The date of purchase or sale was the "contract" or "trade" date as distinguished from the "settlement" date. For purposes of computing purchases and sales prices, commissions and fees with respect to the purchase or sale of the Rite Aid Securities and accrued interest, if any, on the Notes were not included. Transactions in Rite Aid Securities were matched against the same type of Rite Aid Securities on a "first-in, first-out" ("FIFO") basis within the Class Period, by matching the first Rite Aid Securities purchased during the Class Period against the first like-kind Rite Aid Securities sold during the Class Period. "Short" sales were not recognized for any amount of loss on the cover or purchase transaction and no Recognized Loss was computed for any such covering purchase transaction.

9. Approximately 1,185 claims were postmarked later than May 31, 2001, the submission deadline stated in the Notice of the Settlement with the Rite Aid Settling Defendants, including 462 claims submitted after the June 30, 2003 submission deadline stated in the Notice of the Settlements with KPMG, Grass, and Noonan. All such claims were accepted subject to such other deficiencies as were determined to exist. We believe that no delay in the processing or distribution of the Settlement Funds resulted from the provisional acceptance of these claims due to the fact that the finality of the Settlement with Rite Aid Settling Defendants was delayed by an appeal. Accordingly, we respectfully request the Court approve our determination and the determination of counsel to accept these claims. These claims are included in the list of accepted claimants.

10. A total of 134,413 persons or entities have submitted claims herein, of which a total of 98,578 have been accepted.

11. A total of 35,835 claimants were rejected for the following reasons:

| No. of Claims | Code | Reason for Rejection |
|---|---|---|
| 3,599 | P | Outside Class Period |
| 9,117 | M | Duplicate Claim |
| 82 | D | No Documentation |
| 13,805 | N | Claim Form Incomplete, No Purchases Listed |
| 9,189 | G | No Loss Realized Per the Plan of Allocation |
| 31 | B | Inadequate Claimant Identification |
| 12 | W | Claimant Requested Claim Be Withdrawn |

12. 98,578 claims have been accepted representing a total Recognized Loss of $3,656,109,337.

13. Submitted herewith as Exhibit C is a computer printout listing all the claims submitted herein through October 14, 2003. The first portion of the printout alphabetically lists all the accepted claimants and shows their Recognized Loss. The next portion of the printout alphabetically lists all the rejected claimants and shows the code number corresponding to the reason why such claims were rejected.

14. Gilardi & Co. LLC has spent the time necessary to do a thorough job of processing the claims and to protect the interests of each Class Member submitting a claim. No claims were rejected out-of-hand and adequate time was spent communicating with Class Members and suggesting appropriate ways they could document their claims and participate in the settlements. Telephone calls and written letters from claimants to Gilardi & Co. LLC were courteously handled. Class Members were assisted to the fullest extent possible. The professional attitude and work product of Gilardi & Co. LLC was, I believe, the highest quality.

15. It is respectfully requested that the Court enter an Order approving the above determinations accepting and rejecting the claims submitted herein.

**FEES AND DISBURSEMENTS**

16. Gilardi & Co. LLC originally agreed with Plaintiffs' Counsel to mail copies of the Class Notices and Proof of Claim form to Class Members, to cause the publication of summary notices to the Class, to process all claims submitted by Class Members in this action, to prepare the tax returns for the Settlement Funds, and to distribute the Net Settlement Funds to Authorized Claimants in consideration of payment of our standard hourly fees. Our actual hourly fees

incurred and to be incurred amount to $1,636,805, as shown on the invoices annexed hereto as Exhibit D. In our engagement it was also agreed that our out-of-pocket expenses would be reimbursed. Our actual out-of-pocket expenses incurred or expected to be incurred will total $1,505,213, as also shown on the invoices annexed as Exhibit D. Gilardi & Co. LLC respectfully requests the Court to authorize the payment of the full amount of out-of-pocket expenses incurred.

17.    Gilardi & Co. LLC also agreed to mail and publish notice of the Derivative Actions in consideration of payment of our standard hourly fees. Our actual hourly fees incurred in connection with the Derivative Action Notice amount to $4,370, as shown on the invoices annexed hereto as Exhibit E. Our actual out-of-pocket expenses incurred with respect to the Derivative Action Notice total $66,312, as also shown on the invoices annexed as Exhibit E.

18.    The fees and expenses payable to Gilardi & Co. LLC total $3,212,700. Gilardi & Co. LLC has received an interim payment of $900,000. Accordingly, the balance due to Gilardi & Co. LLC is $2,312,700. Gilardi & Co. LLC respectfully requests the Court to authorize the payment of the full amount of out-of-pocket expenses incurred.

## CONCLUSION

19.    For the foregoing reasons, it is respectfully requested that this Court enter an Order (1) approving Gilardi & Co. LLC's administrative determinations accepting and rejecting claims as herein set forth; (2) authorizing payment to Gilardi & Co. LLC of a total of $2,312,700 for the balance of its fees and expenses incurred and to be incurred in connection with its services performed and to be performed in connection with giving notice to the Class and Rite Aid shareholders, preparing the tax returns for the Settlement Funds, processing the Proofs of

Claim, distributing the Net Settlement Funds to the Authorized Claimants; and (3) authorizing distribution of the Net Settlement Funds to the Authorized Claimants.

_____
D. Lee Janvrin

Sworn to before me this 28
day of October, 2003

_____
Notary Public

ROBERT K. GOLDMAN
Commission # 1402554
Notary Public - California
Marin County
My Comm. Expires Feb 24, 2007

12