IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: RITE AID CORPORATION | : | MDL Docket No. 1360 |
| SECURITIES LITIGATION | : | |
| | : | MASTER FILE No. 99-1349 |
| _____ | : | |
| This Document Relates To | : | |
| CLASS ACTIONS | : | |

MEMORANDUM

Dalzell, J.                                                                                                          June 7, 2016

**I.     Introduction**

      We consider here former Rite Aid executive Franklin C. Brown's motion to enforce the permanent injunction this Court entered on August 16, 2001 as part of the Settlement Agreement approved in this class action securities fraud case brought against Rite Aid Corporation (hereinafter "Rite Aid") pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.  Brown is a Released Party under that Settlement Agreement. When we issued the permanent injunction (or "Complete Bar Order" as it is referred to in the Settlement Agreement), we wrote that:

> [T]he Complete Bar Order precludes actions that are 'based upon, arising out of or relating to the Settled Claims.' Obviously, the question of whether any particular claim is, for example, 'related' to the Settled Claims is naturally one that must be made on a case-by-case basis with close attention to the specifics of the individual claim.

In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d 706, 725 (E.D. Pa. 2001).

      Fourteen months after the injunction was entered, Rite Aid sued Brown in the Court of Common Pleas of Cumberland County, Pennsylvania, alleging breach of fiduciary duty, breach of contract, fraud, and civil conspiracy after he was charged in an Indictment in connection with his fiduciary duties to Rite Aid (hereinafter the "Cumberland County Action").  The litigation

has languished for years in that court as Brown served jail time, and so it is presently only at the summary judgment stage. In late 2015 and early 2016, after reviewing our August 16, 2001 permanent injunction, Brown's newly-retained counsel now moves to enforce the Complete Bar Order in an attempt to extricate Brown from this fourteen-year old state court case.

We have jurisdiction over this matter pursuant to Paragraph 15 of the Settlement Agreement.[1]  For the reasons set forth below, we will grant Brown's motion to enforce.

## II.   Legal Standard

Federal courts have the power and duty to enforce permanent injunctions issued by final judgments or orders, and this power includes the ability to stay or enjoin proceedings in a state court in order to "protect or effectuate its judgments."  28 U.S.C.A. § 2283; see also Nat'l R.R. Passenger Corp. v. Pennsylvania Public Utility Commission, 342 F.3d 242, 255 (3d Cir. 2003). But, principles of comity, federalism, and equity always restrain a federal court's ability to enjoin state court proceedings, and an over-inclusive injunction of a state court proceeding would run afoul of well-established principles of equity and federalism.  See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liab. Litig., 369 F.3d 293, 306-310 (3d Cir. 2004).

## III.   Factual and Procedural History

In 1999, Rite Aid shareholders brought a securities class action against the company after it publicly announced disappointing earnings results for that year.[2]  In re Rite Aid Corp. Sec.

---

[1] "Jurisdiction is hereby retained over the parties for all matters relating to this action, including the interpretation, effectuation or enforcement of the Revised Derivative Stipulation and this Order of Final Judgment and Dismissal;" In re Rite Aid Corp., No. 99-CV-2493, 2001 WL 35964566, at *4 (E.D. Pa. Aug. 16, 2001).

Litig., 139 F. Supp. 2d 649, 652 (E.D. Pa. 2001).   The parties settled that case, and we approved the parties' Settlement Agreement with two Revised Orders of Final Judgment that we issued on August 21, 2001.  In re Rite Aid Corp. Sec. Litig., No. 99-CV-1349, 2001 WL 35963382, at *3-4 (E.D. Pa. Aug. 16, 2001).  The Agreement included a Complete Bar Order which provided that:

> 7. In accordance with Section 4(f)(7)(A) of the Private Securities Reform Act of 1995, 15 U.S.C. § 78u-4(f)(7)(A), each of the Released Parties is by virtue of this Settlement DISCHARGED from all claims for contribution that have been or may hereafter be brought by or on behalf of any of the Non-Settling Defendants or any of the Settling Defendants based upon, relating to, or arising out of the Settled Derivative Claims insofar as such Settled Derivative Claims arise under the federal securities laws. Accordingly, (a) the Non-Settling Defendants and the Settling Defendants are hereby permanently barred, enjoined and restrained from commencing, prosecuting or asserting any such claim for contribution against any Released Party based upon, relating to, or arising out of the Settled Derivative Claims insofar as such Settled Derivative Claims arise under the federal securities laws, and (b) the Released Parties are hereby permanently barred, enjoined and restrained from commencing, prosecuting or asserting any claim for contribution against the Non-Settling Defendants based upon, relating to, or arising out of the Settled Derivative Claims insofar as such Settled Derivative Claims arise under the federal securities laws. For purposes of this paragraph 7 and the following paragraphs 8-10, "Non-Settling Defendants" shall include any person who the Derivative Plaintiffs, Rite Aid or the Class Plaintiffs as Rite Aid's assignee may hereafter sue on any claim based upon, relating to, or arising out of the Settled Derivative Claims;
>
> 8. In accordance with applicable federal and state law (including, without limitation, 10 Del. C. § 6304(b) and 42 Pa. Cons.Stat. Ann. § 8327), and in light of the provisions of paragraph 14(e) of the Revised Derivative Stipulation, (a) the Non-Settling Defendants and the Settling Defendants are hereby PERMANENTLY BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or asserting any claim, however styled, whether for indemnification, contribution or otherwise, and whether arising under state, federal or common law, against the Released Parties

---

[2] Rite Aid also restated its financial statements for 1997, 1998, and 1999 in October of 1999.

> based upon, arising out of or relating to the Settled Derivative Claims; and (b) the Released Parties are hereby permanently barred, enjoined and restrained from commencing, prosecuting or asserting any other claim, however styled, whether for indemnification, contribution or otherwise, and whether arising under state, federal or common law against the Non-Settling Defendants based upon, arising out of or relating to the Settled Derivative Claims. Further, in accordance with the applicable provisions of the Uniform Contribution Among Joint Tortfeasors Act (10 Del. C. § 6302(c) and 42 Pa.C.S.A. § 8324(c)) plaintiffs, as assignees of Rite Aid, are hereby permanently barred, enjoined and restrained from commencing, prosecuting, or asserting any claim of Rite Aid to recover contribution from the Non-Settling Defendants as joint tortfeasors;

Id. at *3. Settled Claims were defined as "any claim that had been or could be raised in the Actions or the acts, facts or events alleged in the Actions or in connection with, based upon, arising out of, or relating to the Settlement." In re Rite Aid Corp. Sec. Litig., 146 F. Supp. 2d at 720. Rite Aid was a Settling Defendant under the Agreement and Brown was a Released Party by virtue of his position as an officer of Rite Aid.[3]

In 2002, a Grand Jury sitting in the United States District Court for the Middle District of Pennsylvania returned an Indictment against Brown and other former Rite Aid executives, charging them with broad conspiracies to defraud the Government, Rite Aid, and its Board of Directors, and with obstructing justice by concealing the fraud. See, e.g., Indictment, United States v. Martin L. Grass, et al., No. 02-CR-146 (M.D. Pa. 2002). Brown was alleged to have distributed compensation to himself without approval from Rite Aid's Board, falsely inflated Rite Aid's stated income, disseminated false financial statement through public disclosures and Security and Exchange Commission ("SEC") filings, lied to the SEC, forged documents, and tampered with witnesses. Id. Brown was subsequently convicted by a jury on numerous Counts

---

[3] Brown at different times served as the Executive Vice-President, Chief Legal Counsel, and Vice-Chairman of the Board of Directors of Rite Aid.

-- including conspiracy, false statement, obstruction of justice, and witness tampering. See United States v. Brown, 338 F. Supp. 2d 552, 561 (M.D. Pa. 2004). At his sentencing, Judge Rambo stated that Brown had, among other things, "orchestrated, organized and led the extensive obstructive conduct designed to cover up the accounting fraud," and fabricated a letter purporting to award him extravagant severance benefits. Sentencing, United States v. Martin L. Grass, et al., No. 02-CR-146 (M.D. Pa. 2002). Brown's conviction was affirmed on appeal, see United States v. Brown, 595 F.3d 498 (3d Cir. 2010), and his collateral attack on his conviction failed. See United States v. Brown, No. 02-CR-146, 2013 WL 6182032 (M.D. Pa. Nov. 25, 2013).

Rite Aid initiated the Cumberland County Action against Brown in 2002. See Rite Aid. Corp. v. Brown, No. 02-CV-4922 (Ct. Comm. Pl. Cumberland Cty. 2002). In its Amended Complaint, filed in 2004, Rite Aid asserted claims against Brown for breach of fiduciary duty, aiding and abetting, fraud, and conspiracy. Rite Aid also asserted breach of contract claims under three separate theories: (1) Brown's obligations as an officer and director, (2) Brown's deferred compensation agreement, and (3) repayment of advances Rite Aid provided Brown to defend himself against the criminal charges. In December of 2015, Rite Aid filed a motion for summary judgment in the Cumberland County Action seeking damages in the amount of $297.4 million, which included:

> $60.8 million in legal and other professional expenses incurred by Rite Aid defending SEC, Department of Justice and civil proceedings relating to the misconduct of Brown and his co-conspirators; $10.9 million in legal fees advanced by Rite Aid to defend Brown and other former officers relating to proceedings brought against them; $57.8 million in accounting fees relating to Rite Aid's restatement of its financial statements; $6.1 million in payments made to Brown and other Rite Aid executives for unauthorized and/or unearned incentive and severance payments; and $161.8 million paid by Rite Aid to settle shareholder claims

5

>     asserted against the company as a result of the misconduct of
>     Brown and his co-conspirators.

Decl. of Douglas E. Donley at ¶ 3.  Rite Aid has since dropped its claim against Brown for $161.8 million to settle shareholder claims, leaving $135.6 million in asserted damages.

Brown retained present counsel soon after this filing.  Now, after fourteen years of litigation, Brown asserts that the Cumberland County Action is barred by the Complete Bar Order.

### IV.   Discussion

In determining whether to grant Brown's motion, we must first decide on the proper framework to use when analyzing each of Rite Aid's Cumberland County Action claims, and then apply that framework to each individual claim.  We must then consider Rite Aid's argument that Brown has waived any defense he may have under the Complete Bar Order, as it is untimely.  We discuss these issues separately and in turn.

#### A.   Interpreting the Complete Bar Order

The threshold question before us relates to how we should analyze the language of the Complete Bar Order when determining whether the Settlement Agreement bars Rite Aid's claims in the Cumberland County Action against Brown.  In analyzing the Complete Bar Orders contained in settlement agreements for PSLRA actions, federal courts have applied two separate tests.  The first is the interrelatedness test, which states that "[t]he propriety of the settlement bar order should turn upon the interrelatedness of the claims that it precludes, not upon the labels which parties attach to those claims."  In re U.S. Oil & Gas Litig., 967 F.2d 489, 495-96 (11th Cir. 1992).  The Eleventh Circuit articulated this test in response to a non-Settling Defendant's attempt to bring an "allegedly independent causes of action for fraud and negligence" against one

of the Settling Defendants in a PSLRA case.  Id. at 495.  There, the court noted that "a rose by any other name is still a rose," and that the non-Settling Defendant's fraud and negligence claims "are nothing more than claims for contribution or indemnification with a slight change in wording."  Id. (quoting South Carolina Nat. Bank v. Stone, 749 F. Supp. 1419, 1433 (D.S.C. 1990)).  The Ninth Circuit in In re Heritage Bond Litig., 546 F.3d 667, 678-680 (9th Cir. 2008), best articulated a similar, but distinct, independent claims test, stating that the "only claims that could appropriately be barred by [a Complete Bar Order], in addition to those for contribution and indemnity, were 'disguised' claims for contribution or indemnity …" (citing Gerber v. MTC Elec. Techs. Co., 329 F.3d 297, 306-07 (2d Cir. 2003)).  The court went on to note that disguised indemnification and contribution claims were ones where "damages are calculated based on …defendants' liability to the plaintiffs," and thus the "distinction turns not on the presence of independent claims, but on whether the injured party can assert independent damages."  Id. at 679 (internal citations and quotations omitted); see also Gerber, 329 F.3d at 307 ("The issue, in other words, is less one of independent claims than independent damages.").

To be sure, the language of the Complete Bar Order here, contained in the Settlement Agreement that Rite Aid freely agreed to, is broader than the two tests described above.  The Complete Bar Order reads in relevant part that:

> the Non–Settling Defendants and the Settling Defendants are hereby PERMANENTLY BARRED, ENJOINED AND RESTRAINED from commencing, prosecuting, or asserting any other claim, however styled, **whether for indemnification, contribution or otherwise**, and whether arising under state, federal or common law, against the Released Parties based upon, arising out of or relating to the Settled Claims…

In re Rite Aid Corp. Sec. Litig., 2001 WL 35963382, at *3-4 (emphasis added).  But Rite Aid's decision to sign the Settlement Agreement creates an important distinction between this case and

7

the cases cited above. In <u>In re U.S. Oil & Gas Litig</u> and <u>In re Heritage Bond Litig.</u>, non-Settling Defendants who had opted out of the Complete Bar Orders at issue were asserting claims against Settling Defendants. Here, Rite Aid agreed to settle so as to limit the amount of its liability and end the litigation. It is far different for Rite Aid, as a Settling Defendant, to attempt to circumvent the Complete Bar Order that it agreed to by asking us to now adopt the independent claims test than it would be for a non-Settling Defendant to try to eschew a Complete Bar Order that it never agreed to. We will therefore focus on the language of the Complete Bar Order in determining whether Rite Aid's Cumberland County Action claims against Brown are barred.

### B. Analyzing Rite Aid's Claims In The Cumberland County Action

We must separately analyze each of Rite Aid's Cumberland County Action claims and determine whether they are "based upon, arising out of or relating to the Settled Claims." Those claims, contained in the Amended Complaint, are: (1) breach of fiduciary duty, (2) aiding and abetting the breach of fiduciary duty, (3) fraud, (4) conspiracy, (5) breach of contract relating to Brown's obligations as an officer and director, (6) breach of contract relating to his deferred compensation agreement, and (7) breach of contract relating to the repayment of advances Rite Aid provided Brown and other executives to defend themselves in the criminal proceedings.

#### 1. Breach of Fiduciary Duty

Rite Aid first avers that Brown breached his fiduciary duty when he engaged in the criminal conduct described in the Indictment. Cumberland County Action Am. Compl. at ¶ 15. Brown was convicted on numerous counts -- including conspiracy, making false statements, and obstruction of justice. Indictment, <u>United States v. Martin L. Grass, et al.</u>, No. 02-CR-146 (M.D. Pa. 2002). Those convictions arose from Brown distributing compensation to himself without

approval from Rite Aid's Board, falsely inflating Rite Aid's stated earnings, disseminating false financial statements through public disclosures and SEC filings, lying to the SEC, and forging documents. On its face, this count from the Cumberland County action relates to Rite Aid's damages requests for $60.8 million in legal and other professional expenses Rite Aid incurred in defending itself against SEC, Department of Justice and civil proceedings related to the misconduct of Brown and his co-conspirators, and $57.8 million in accounting fees related to Rite Aid's restatement of its financial statements.

It is clear from both the language of the Amended Complaint and the damages claimed in the motion for summary judgment in the Cumberland County Action that this count is "based upon, arising out of or relating to the Settled Claims" here. Shareholders initiated this matter when Rite Aid reported disappointing earnings results in 1999 and subsequently restated its financial documents for fiscal years 1997, 1998, and 1999. Brown's alleged breach of his fiduciary duty directly related to Rite Aid's disappointing earnings results and restatement of its financial documents. In fact, it was one of the underlying roots of the Cumberland County Action. We therefore find that Rite Aid's breach of fiduciary duty claim in the Cumberland County Action is barred by the Complete Bar Order.

### 2. Aiding And Abetting Breach Of Fiduciary Duty

Rite Aid next brings a claim for aiding and abetting breach of fiduciary duty, alleging that Brown aided other former Rite Aid executives by helping them breach their fiduciary duties to the company. Cumberland County Action Am. Compl. at ¶¶ 19-21. Like the previous claim, this count relates to Rite Aid's damages request for $60.8 million in legal and other professional expenses it incurred by defending itself against SEC, Department of Justice and civil proceedings

relating to the misconduct of Brown and his co-conspirators, and $57.8 million in accounting fees relating to Rite Aid's restatement of its financial statements.

As we said in our analysis of the previous breach of fiduciary duty claim, it is clear from both the language of the Amended Complaint and the damages claimed in the motion for summary judgment in the Cumberland County Action that this aiding and abetting count is "based upon, arising out of or relating to the Settled Claims" here. Rite Aid shareholders initiated this matter when Rite Aid reported disappointing earnings results in 1999 and subsequently restated its financial reports for fiscal years 1997, 1998, and 1999. Brown's alleged aiding and abetting of two former executives' breaches of their fiduciary duties was directly related to Rite Aid's disappointing earnings results and restatement of its financial reports. In fact, it was one of the underlying roots of the Cumberland County Action. We therefore find that Rite Aid's aiding and abetting breach of fiduciary duty claim against Brown in the Cumberland County Action is barred by the Complete Bar Order.

        3.     **<u>Fraud</u>**

Rite Aid also asserts a claim of fraud against Brown, citing his Indictment. This claim supports Rite Aid's damages requests for $60.8 million in legal and other professional expenses and $57.8 million in accounting fees relating to Rite Aid's restatement of its financial statements. As we previously stated, Brown's conviction arose from his inflating his compensation without approval from Rite Aid's Board, falsely inflating Rite Aid's stated earnings, disseminating false financial statements through public disclosures and SEC filings, lying to the SEC, and forging documents. These actions, which form the basis for the fraud claim in the Cumberland County Action, are related to the Settled Claims since Rite Aid's liability in the PSLRA class action

10

stemmed from Brown's and other Rite Aid officers' corporate malfeasance. Rite Aid's fraud claim against Brown is thus barred.

### 4. Conspiracy

Rite Aid next avers a conspiracy claim against Brown, citing the allegations from its Amended Complaint and the Indictment and again claiming the aforementioned damages. Specifically, Rite Aid states that Brown conspired with Martin Grass and Franklyn Bergonzi to defraud Rite Aid and its Board of Directors. Again, all of these actions Brown performed in concert with Grass and Bergonzi were directly related to the Settled Claims in this PSLRA class action, and thus Rite Aid's conspiracy claim is barred.

### 5. Breach of Contract – Obligations as Director and Officer

Rite Aid additionally asserts a breach of contract claim relating to Brown's obligations as a director and officer of the company. This claim is all but identical to Rite Aid's breach of fiduciary duty claim against him. As we said when analyzing that count, it is clear from both the language of the Amended Complaint and the damages claimed in the motion for summary judgment that this count is "based upon, arising out of or relating to the Settled Claims" here. Rite Aid shareholders initiated this matter when Rite Aid reported disappointing earnings results in 1999 and subsequently restated its financial documents for fiscal years 1997, 1998, and 1999. Brown's alleged breach of contract – specifically regarding his obligations as a director and officer of Rite Aid, was directly related to the disappointing earnings results and restatement of financial documents. In fact, it was one of the underlying roots of the action. We therefore find that Rite Aid's breach of contract claim relating to Brown's obligations as a director and officer is barred.

### 6. <u>Breach of Contract – Deferred Compensation Agreement</u>

Rite Aid's next claim relates to Brown's actions in giving himself and other Rite Aid executives deferred compensation agreements that were not approved by Rite Aid's Board of Directors. This count is tied to Rite Aid's damages request for $6.1 million in unauthorized incentive and severance payments to Brown and other officers. We find that Brown's actions regarding his and others' unauthorized deferred compensation agreement cannot be neatly separated from the voluminous bad acts that form the basis of the PSLRA litigation. As in many of its Cumberland County Action claims, Rite Aid relies heavily on the Indictment and subsequent conviction of Brown to substantiate this count. It is instructive that the Government, when prosecuting Brown, did not characterize each of his transgressions as separate occurrences, but instead portrayed his actions as part of a larger, comprehensive, and cohesive scheme to defraud both Rite Aid and its shareholders. We agree with this portrayal, and find that Brown's actions regarding the issuance of unauthorized incentive and severance payments are related to the Settled Claims and thus barred.

### 7. <u>Breach of Contract – Advanced Repayment Undertaking</u>

Rite Aid claims $10.9 million in damages for legal fees it advanced to Brown to assist Brown and other Rite Aid executives in the defense of their criminal charges. For the reasons stated in our analysis of Rite Aid's deferred compensation claim against Brown, we find that the advanced payment claim is similarly barred.

### C. <u>Rite Aid's Claim of Waiver</u>

Finally, Rite Aid avers that, even if the Complete Bar Order applies to all of its claims in the Cumberland County Action, Brown has waived any defense arising out of the Settlement

Agreement by failing to assert said defenses during the previous fourteen years of the Cumberland County litigation. We reject this argument. The issue here is not whether Brown waived an available defense.[4] Brown is not asserting an affirmative defense by bringing this motion -- he is asking that we enforce our Complete Bar Order and final judgment from 2001. Thus, the question becomes whether this Court has the power to enforce its own Order, which is, in this case, the Settlement Agreement. The answer to that question is, of course, an unequivocal "Yes."

Federal courts have broad equitable powers to order an effective remedy and ensure its implementation. See Resident Advisory Bd. v. Rizzo, 530 F. Supp. 383, 388 (E.D. Pa. 1980) (citing Hills v. Gautreaux, 425 U.S. 284, 293-94 (1976)). Moreover, federal courts have inherent powers to protect and effectuate their prior judgments. Id. As the Supreme Court stated in Nken v. Holder, 556 U.S. 418, 428 (2009), "[w]hen a court employs the extraordinary remedy of injunction…it directs the conduct of a party, and does so with the backing of its full coercive powers." (internal citations and quotations omitted).

In this matter, the Complete Bar Order enjoins Settling Defendants from bringing actions against Released Parties if those actions are based upon, arising out of, or relating to the Settled Claims. When we employed the "extraordinary remedy of injunction" in this case, we were directing the parties' future conduct. The Complete Bar Order is part of the Settlement Agreement, where we entered final judgment in favor of the plaintiffs and against the defendants. We certainly still have the power to ensure that Rite Aid is following that Order.

To be sure, we cannot ignore the principles of comity and federalism when deciding to enjoin a state court proceeding. We recognize that the Court of Common Pleas for Cumberland

---

[4] See Resp. Opp'n Mot. at 14, citing Pa. R. Civ. P. 1032(a).

13

County has exercised jurisdiction and spent significant time and resources over the past decade and a half adjudicating the Cumberland County Action. But here, the interests of federalism must prevail. We as a federal court issued a final injunction that Rite Aid violated when it commenced the Cumberland County Action. The enforcement of our lawful mandate trumps the efforts of our brethren in the Pennsylvania courts, as our Orders would have no meaning if they could be avoided by parties who would violate our Orders by being able to commence actions in other jurisdictions. We therefore reject Rite Aid's waiver argument.

## V.     Conclusion

Rite Aid has brought the Cumberland County Action against Brown in violation of the Complete Bar Order in the Settlement Agreement which it freely agreed to fifteen years ago in this PSLRA class action. But we cannot allow a violation of this Court's Order to continue. We will grant Brown's motion to enforce the permanent injunction order and enjoin Rite Aid from further pursuing the Cumberland County Action.

BY THE COURT:

_/s/ Stewart Dalzell, J.
Stewart Dalzell, J.